# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## APPEAL NO. 22-56192

CARLOS RIVAS,

Plaintiff - Appellant

v.

COVERALL NORTH AMERICA, INC.,

Defendant-Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF CALIFORNIA

Case No. 8:18-cv-01007-JGB-KK
The Honorable Jesus Bernal

## REPLY BRIEF OF PLAINTIFF-APPELLANT

Shannon Liss-Riordan
Adelaide H. Pagano
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................... 1

ARGUMENT ......................................................................................... 2

    I.    Coverall Waived Its Right to Arbitration. ................................. 2

    II.   Rivas Could Not Effectively Vindicate His Rights in Arbitration. ..................................................................................... 7

    III.  Rivas Has Standing to Bring a Representative PAGA Claim, Even if He Submits His Individual Claim to Arbitration. ................................................................... 11

CONCLUSION ..................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

Adolph v. Uber Techs., Inc.
No. S274671, 2023 WL 4553702 (Cal. July 17, 2023) ....................... 2, 12

Ali v. Carnegie Inst. of Washington
967 F. Supp. 2d 1367 (D. Or. 2013), aff'd, 684 F. App'x 985
(Fed. Cir. 2017), and aff'd, 684 F. App'x 985 (Fed. Cir. 2017),
and aff'd, 684 F. App'x 985 (Fed. Cir. 2017) ............................................. 5

Arizonans for Off. Eng. v. Arizona
520 U.S. 43 (1997) ................................................................................... 15

Armendariz v. Found. Health Psychcare Servs., Inc.
24 Cal. 4th 83 (2000) ................................................................................. 8

AT&T Corp. v. Ting
319 F.3d 1126 (9th Cir. 2003) .................................................................... 8

Dean Witter Reynolds, Inc. v. Byrd
84 L.Ed.2d 158 (1985) ................................................................................ 3

Dominguez v. Sonesta Int'l Hotels Corp.
2023 WL 25707 (N.D. Cal. Jan. 3, 2023) ................................................. 17

Epic Systems Corp. v. Lewis
200 L. Ed. 2d 889 (2018) ............................................................................ 3

Fisher v. A.G. Becker Paribas Inc.
791 F.2d 691 (9th Cir. 1986) ...................................................................... 3

Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs,
Ga.
138 S. Ct. 2623 (2018) ................................................................................ 4

Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs,
Georgia
703 F. App'x 929 (11th Cir. 2017) .............................................................. 4

George v. Manheim Invs., Inc.
   731 F. App'x 624 (9th Cir. 2018) ............................................................. 17

Gonzalez v. Coverall North America Inc.
   Appeal No. 22-56189 (9th Cir.) ............................................................. 11

Graves v. Arpaio
   623 F.3d 1043 (9th Cir. 2010) ................................................................. 5

Hangarter v. Provident Life & Acc. Ins. Co.
   373 F.3d 998 (9th Cir. 2004) ................................................................. 15

Hollingsworth v. Perry
   570 U.S. 693 (2013) ...................................................................... 13, 15

Karcher v. May
   484 U.S. 72 (1987) ............................................................................ 14

Kim v. Reins Int'l California, Inc.
   9 Cal. 5th 73 (2020) .............................................................. 13, 14, 16

Lamps Plus, Inc. v. Varela
   139 S. Ct. 1407 (2019) ......................................................................... 3

Lee v. Am. Nat'l Ins. Co.
   260 F.3d 997 (9th Cir. 2001) ................................................................. 15

Magadia v. Wal-Mart Assocs., Inc.
   999 F.3d 668 (9th Cir. 2021) ................................................................. 15

Martin v. Yasuda
   829 F.3d 1118 (9th Cir. 2016) ................................................................. 6

Martinez-Gonzalez v. Elkhorn Packing Co., LLC
   2022 WL 10585178 (N.D. Cal. Oct. 18, 2022) ...................................... 17

Mullaney v. Wilbur
   421 U.S. 684 (1975) ........................................................................... 13

Novosteel SA v. U.S., Bethlehem Steel Corp.
   284 F.3d 1261 (Fed. Cir. 2002) ............................................................... 4

Powers v. Ohio
   499 U.S. 400 (1991) .................................................................................. 14

Roldan v. Callahan & Blaine
   219 Cal. App. 4th 87 (2013) ...................................................................... 8

Seifu v. Lyft, Inc.
   89 Cal. App. 5th 1129 (2023) .................................................................. 14

Viking River Cruises, Inc. v. Moriana
   213 L. Ed. 2d 179 (2022) ........................................................................... 4

**Statutes**

Private Attorney General Act ("PAGA")
   Cal. Lab. Code § 2698, *et seq.* .................................................................. 1

iv

# INTRODUCTION

Plaintiff-Appellant Carlos Rivas, a low-wage worker, alleges Defendant-Appellee Coverall misclassified him and other similarly situated aggrieved cleaning workers as independent contractor "franchisees" rather than employees and had committed various violations of the Labor Code as a result. Because Rivas had signed an adhesive arbitration agreement, drafted by Coverall, he attempted to file his claim under the Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2698, *et seq.*, with the American Arbitration Association ("AAA"). However, the AAA closed his case because Rivas could not—and did not—pay the $4,000 fee required by AAA to appoint an arbitrator to determine whether he should be required to split the costs of the arbitration with Coverall or consider any claims regarding Rivas' inability to pay. Accordingly, Rivas re-filed his PAGA claim in Court in June 2018. Between June 2018 and November 2019, the parties engaged in motion practice and litigated the merits of Rivas' claim. During that time, Coverall filed a counterclaim and two Answers, neither of which raised arbitration as affirmative defenses. Nearly eighteen months after Rivas filed his case and two years after Rivas had filed his arbitration, Coverall filed a Motion to Compel arbitration, which is the sole issue in this appeal.

1

Coverall's Answering Brief does not introduce or raise any arguments undermining Rivas' arguments and conclusions in his Opening Brief. Rather, it peddles falsehoods and cites inapplicable case law. The California Supreme Court's unanimous, July 17, 2023 decision in <u>Adolph v. Uber Techs., Inc.</u>, No. S274671, 2023 WL 4553702, at *1 (Cal. July 17, 2023), also affirms what Rivas has been arguing for years: if his individual claims are compelled to arbitration, he may still bring a representative action in court under PAGA. Where Coverall addresses issues or raises arguments not discussed in Rivas' Opening Briefing, Rivas addresses these issues below.

## ARGUMENT

### I.  Coverall Waived Its Right to Arbitration.

First, and notably, Coverall does not point to any case law contradicting Rivas' argument—and ample supporting case law—that Coverall engaged in conduct inconsistent with its right to arbitrate by engaging in litigation on the merits of this lawsuit for eleven months before even mentioning arbitration. Rather, Coverall relies solely on an escape hatch that does not apply here—that moving to compel arbitration would have been futile under then-existing law. However, as explained in Rivas' Opening Brief, Coverall cannot rely on the Supreme Court's decisions in

2

Epic Systems Corp. v. Lewis, 200 L. Ed. 2d 889 (2018), nor Lamps Plus, Inc. v. Varela, 139 S. Ct. 1407 (2019), the first of which was decided well before Mr. Rivas even filed the case and the second of which did not change the landscape with respect to the enforceability of a representative PAGA waiver.

Also telling is that Coverall does not explain how Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 697 (9th Cir. 1986), the plainly distinguishable case the District Court cited in support of its erroneous conclusion, is apposite.  Plaintiffs in Fisher brought federal securities law and common law claims against a defendant, and the prevailing view in courts at the time was that where such claims are "intertwined," the right to compel arbitration does not exist. Id. at 694. Before the case was decided, the U.S. Supreme Court rejected the "intertwining doctrine" and effectively created a right to compel arbitration where none previously existed. See Dean Witter Reynolds, Inc. v. Byrd, 84 L.Ed.2d 158 (1985).  This Court concluded that Byrd was directly on point and created a right to compel arbitration where none had existed before Byrd was decided. Id. at 697. Here, by contrast, the same cannot be said of the Supreme Court's decision in Lamps Plus, which did not even address the PAGA and instead spoke to when a right to class arbitration may be inferred.

3

Further distinguishing this case from <u>Fisher</u> is that there is evidence that Coverall *intentionally* relinquished its right to compel arbitration. Indeed, Rivas' claims were originally filed in arbitration, and Coverall fought to make sure the AAA Commercial Rules applied and declined to advance any of the filing fees, necessitating Rivas to re-file his claims in court. Once in court, Coverall did not move to compel arbitration or offer to pay the arbitration costs, if Mr. Rivas would return to arbitration.

Coverall contends that it would have been justified in waiting until <u>Viking River</u> was decided by the Supreme Court in waiting to compel arbitration and therefore could not have waived its right to arbitrate. <u>See</u> <u>Viking River Cruises, Inc. v. Moriana</u>, 213 L. Ed. 2d 179 (2022).[1]  This

---

[1]     Notably, Coverall made this argument in District Court for the *first* time in its Reply Memorandum of Points and Authorities In Support of its Renewed Motion to Compel Arbitration. III-ER-316 at ECF No. 105. Accordingly, Rivas was not able to address this point in the District Court and the District Court—and this Court—should consider this argument waived.  <u>See</u> <u>Novosteel SA v. U.S., Bethlehem Steel Corp.</u>, 284 F.3d 1261, 1274 (Fed. Cir. 2002). ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."); <u>see also</u> <u>Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, Georgia</u>, 703 F. App'x 929, 938 (11th Cir. 2017), <u>cert. denied sub nom.</u> <u>Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, Ga.</u>, 138 S. Ct. 2623 (2018) ("[T]he party seeking to raise the issue [on appeal] must first present it to the [D]istrict Court in a manner that allows the Court an opportunity to recognize and rule on it.") (internal quotation and citation omitted). Furthermore, "generally, any argument first raised in a reply brief is

counter-factual argument must be rejected, as it wholly ignores that <u>Viking River</u> was decided in 2022, years *after* Coverall first argued Rivas should be compelled to arbitration. So, it makes no sense that Coverall would argue it would have been justified waiting for <u>Viking River</u>, because it did *not* do so. The very nature of this counter-factual argument is problematic. Coverall asks this court to entertain a hypothetical -- that any waiver of the right to compel arbitration back in 2019 is irrelevant because it could have validly moved to compel arbitration years later in 2022, on the basis of <u>Viking River</u>, and thus, its conduct in waiving arbitration in 2019 should be forgiven. But if Coverall had not filed a patently frivolous and belated motion to compel arbitration back in 2019, this case would have long since been decided before <u>Viking River</u> was ever decided. Indeed, Mr. Rivas' summary judgment motion has been fully briefed and pending before the District Court since late 2019.

Coverall barely attempts to refute the fact that it blatantly sought a merits determination from the federal court below, long before moving to compel arbitration – a fact which weighs heavily in favor of finding waiver.

---

waived." <u>Ali v. Carnegie Inst. of Washington</u>, 967 F. Supp. 2d 1367, 1380 (D. Or. 2013), <u>aff'd</u>, 684 F. App'x 985 (Fed. Cir. 2017), <u>and aff'd</u>, 684 F. App'x 985 (Fed. Cir. 2017), <u>and aff'd</u>, 684 F. App'x 985 (Fed. Cir. 2017) (citing <u>Graves v. Arpaio</u>, 623 F.3d 1043, 1048 (9th Cir. 2010)).

Martin v. Yasuda, 829 F.3d 1118, 1125 (9th Cir. 2016). In a footnote, Coverall attempts to sweep under the rug the fact that it argued to the District Court that Borello applied to Rivas' claims, rather than the ABC test announced in Dynamex, saying the "issue was raised solely in the context of Coverall's claim that the case would be unmanageable." (Dkt. 19 at 20, n. 3.) However, this argument still amounted to a request for the District Court to make a merits determination regarding which standard would apply to the claims, regardless of the "context" in which it was raised. In another footnote, Coverall argues it did not mention arbitration in its answer because it "did not need to." (Id. at 21, n. 4.) While this may be true, courts consider the "totality of the parties' actions" in determining whether a party waived its right to compel arbitration, and silence on the issue is a factor. Martin v. Yasuda, 829 F.3d 1118, 1125 (9th Cir. 2016). Here, Coverall's repeated failure to raise arbitration in either of its two Answers filed in the federal court is just *one* factor among many which counsels in favor of finding waiver. Coverall excessively delayed in moving to compel arbitration[2],

---

[2]    Coverall proceeded to litigate this case in federal court for almost a year before even *mentioning* arbitration and only filed its motion eighteen months into the case.

sought determinations on the merits in court[3], and engaged in the litigation machinery, including by participating in case management, mediation, and discovery, causing the case to be at an advanced stage, with a fully briefed motion for summary judgment pending by the time its motion to compel arbitration was finally taken up. The District Court plainly erred in failing to find waiver, and nothing Coverall raises in its Answering Brief meaningfully responds to the plethora of case law cited by Plaintiff Rivas in support of this inescapable conclusion.

## II. Rivas Could Not Effectively Vindicate His Rights in Arbitration.

Coverall insists that, contrary to Plaintiff Rivas' arguments in his Opening Brief, he plainly could have effectively vindicated his rights in arbitration because he allegedly could have afforded to pay $4,000 in filing fees billed by the American Arbitration Association; according to Coverall, Rivas has not met his burden to show that this sum was cost-prohibitive and

---

[3]     Coverall sought judicial judgment on the merits by filing a Rule 12 (b)(6) Motion to Dismiss (arguing that Plaintiff's allegations were deficient, that he failed to exhaust his administrative remedies, and that the <u>Dynamex</u> ABC test did not apply to the instant action). II-ER-269. Coverall also filed a Rule 12(f) Motion to Strike, arguing that Plaintiff Rivas was an inadequate representative under the PAGA and that Rivas could not seek a public injunction or bring a PAGA claim for certain violations of the Labor Code. II-ER-262. It also filed a counter-claim against Rivas, seeking a judgment that if were found to be an employee, his franchise agreement was void. II-ER-165, ¶¶ 48-50.

he purportedly could afford it after all. First, regardless of whether Rivas could or could not amass $4,000[4], it is clear that the arbitration agreement "imposes on … [plaintiffs] costs greater than those a complainant would bear if he or she would file the complaint in court." AT&T Corp. v. Ting, 319 F.3d 1126, 1151 (9th Cir. 2003) (citing Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000)). Indeed, Coverall does not even attempt to explain how its arbitration provision is enforceable under Armendariz, given the $4,000 fee billed by the AAA (an oversight the District Court made as well). Nor does Coverall respond to Roldan v. Callahan & Blaine, 219 Cal. App. 4th 87 (2013), which makes clear that California state law *does* extend the "effective vindication" doctrine to state law claims because California public policy requires that indigent citizens be able to vindicate their rights in *some* forum, without regard to their financial status.

In any case, the record is crystal clear that Rivas could not afford $4,000 in filing fees just to initiate his arbitration, either in 2017 or today. Contrary to Coverall's absurd contention, Rivas never earned more than $250,000 per year. The Demand for Arbitration that Rivas' counsel

---

[4]     In any case, contrary to Coverall's contentions, the record is clear that he could ***not*** afford this sum. See infra, p. 9-10.

submitted to the AAA with a checked box indicating his annual income was greater than $250,000 was, obviously and undoubtedly, a mistake. II-ER-14. Indeed, upon reviewing the document where Rivas' counsel checked a box to the left of "Over $250,000," it is easy to see how that error could have been made. These boxes and numbers appear below "Claim," which is in bold, followed by a question, not in bold, asking, "What was/is the employee's annual wage range?" When checking "Over $250,000," counsel believed they were indicating the amount of the *claim*. This is further supported by the fact counsel left a small box immediately below the checked box blank, even though that box asks for the "Amount of Claim" in small type. Of course, Coverall is well aware this was an administrative error, given the *sworn affidavit* Rivas submitted to the District Court in November 2022 explaining he has never earned anything approaching that amount of money and that he could not afford the arbitration fees. II-ER-29-33.

To reiterate, Rivas' sworn affidavit is clear that, by late 2017, he could not make ends meet by working solely for Coverall, so he took on a factory job where he earned $17 per hour and worked 40 hours per week. In 2020, he received an IRS 1099 form from Coverall showing he made approximately $17,000 from cleaning. That year, he also earned

9

approximately $34,000 working at his factory job. His earnings in 2020 are a fifth of what Coverall knowingly and falsely states he was earning. In 2022, Rivas began working full time as a truck driver, where he makes $903 dollars per week—or less than $50,000 per year. If the Court considered Coverall's false claim that Rivas earned $250,000, it would be plain error for the District Court to credit a box checked by counsel in a separate proceeding rather than Plaintiff's sworn affidavit in this case.[5]

Perhaps even more troubling than Coverall's decision to rely on information regarding Rivas' earnings that it *knows* to be incorrect is its claim that Rivas "fail[ed] to produce *any* document from the AAA corroborating his counsel's unsupported claim that the AAA had demanded a $4,000 payment to proceed . . . ." (Dkt. 19 at 27.) This is patently false, and Coverall is well aware of this. Indeed, Coverall's own counsel was copied as a recipient of a letter sent from the AAA to all parties stating, "there is an outstanding balance of $4,000" to proceed with arbitration, and continuing, "Accordingly, we ask that claimant remit the balance of the fee

---

[5]     Tellingly, Coverall raised Rivas' alleged $250,000 a year income for the *first* time in its Reply Memorandum of Points and Authorities In Support of its Renewed Motion to Compel Arbitration. III-ER-316 at ECF No. 105. For the reasons discussed <u>supra</u> at n. 1, this Court should consider this argument waived.

by April 19, 2018."[6]  Coverall's counsel is perjuring himself by suggesting that Rivas was never actually  billed $4,000 in filing fees by AAA and by attempting to cast doubt on that allegation in Mr. Rivas' federal court complaint, which he knows to be true.[7]

### III. Rivas Has Standing to Bring a Representative PAGA Claim, Even if He Submits His Individual Claim to Arbitration.

Finally, Coverall argues that if Rivas submits his claims to arbitration, he will lack Article III standing to pursue his representative PAGA claim in federal court.[8]  As the California Supreme Court's unanimous, July 17, 2023

---

[6]  Rivas has attached this letter to his concurrently filed Motion to Supplement the Record. This letter was also filed as Exhibit 9 to Rivas' counsel's declaration in support of plaintiff's Motion to Reopen in a related case against Coverall in district court and now on appeal before this Court. See Gonzalez v. Coverall North America Inc., Appeal No. 22-56189 (9th Cir.), at II-ER-147.  Coverall's counsel is the same in this and the Gonzalez case.

[7]  Coverall also claims that "there was no evidence Plaintiff sought financial relief from AAA" and that "Coverall agreed to advance the costs of arbitration if an arbitrator concluded Plaintiff could not bear those costs." (Dkt. 19 at 25.)  These claims are disingenuous at best. First, the AAA fee waiver only applies to filing fees, not the $4,000 in arbitrator compensation he was ordered to pay. Second, Coverall did not offer or agree to advance the costs of compensating and appointing an arbitrator, costs Rivas was asked to bear if he wanted the arbitrator to even consider whether he could afford filing fees.

[8]  Coverall raised this argument for the first time in its Reply Memorandum of Points and Authorities In Support of its Renewed Motion

decision on this issue makes clear, Coverall is wrong; if Rivas is compelled to arbitrate his individual claims, he may still bring a representative PAGA claim in court.  See Adolph, 2023 WL 4553702, at *1.  In Adolph, the California Supreme Court held:

> Where a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA.

Id.

Anticipating the ruling in Adolph, Coverall homed in on the distinction between state versus federal court.  Straining credulity, Coverall argues that even if "an aggrieved employee who has been compelled to arbitrate individual PAGA claims maintains standing *under state law* to pursue a representative PAGA action in *state court,* that ruling would have no bearing on whether such an employee maintains standing to pursue a PAGA action on behalf of other allegedly-aggrieved employees *in federal court,* which is a question of *federal law.*"  (Dkt. 19 at 28–29.)  Specifically, Coverall argues that if Rivas resolves his individual PAGA claims through arbitration, "he will no longer have an injury that his federal court action can redress—*i.e.*, he will have no Article III standing."  (Id. at 57.)

---

to Compel Arbitration. III-ER-316 at ECF No. 105. For the reasons discussed supra at n. 1, this Court should consider this argument waived.

While Coverall is correct that "standing in federal court is a question of federal law, not state law," (Id. at 60 (quoting Hollingsworth v. Perry, 570 U.S. 693, 715 (2013)), it is also axiomatic that "state courts are the ultimate expositors of state law." Mullaney v. Wilbur, 421 U.S. 684, 691 (1975). As the California Supreme Court observed in Adolph, "Where, as here, a cause of action is based on a state statute, standing is a matter of statutory interpretation." Id. at 5 (citing Kim v. Reins Int'l California, Inc., 9 Cal. 5th 73, 83 (2020)). Accordingly, federal courts must consider and defer to the California Supreme Court's interpretation of PAGA when analyzing whether a plaintiff has standing to bring a PAGA representative action.

The cases Coverall cites to support its argument are inapposite. The first case Coverall cites is Hollingsworth, 570 U.S. 693. In Hollingsworth, the U.S. Supreme Court considered whether petitioners—official proponents of California's Proposition 8, which outlawed same-sex marriage—could step into the shoes of state officials who themselves could not defend the Proposition. Id. at 702. The Supreme Court held petitioners lacked a "direct stake" in the outcome of their appeal, and that theirs was a "generalized grievance" insufficient to confer standing. Id. at 706. The Supreme Court also considered whether petitioners could assert the State of California's

rights on the State's behalf, finding they could not.  Id. at 707-08.[9]

Hollingsworth is easily distinguished on the facts, as petitioners were not

authorized by state law—as Rivas is here by PAGA—to pursue their claims

on the state's behalf.  Rather, the California Supreme Court simply told the

Ninth Circuit that petitioners may argue in defense of the Proposition.  Id. at

712.  Rivas' authorization *by law* is crucial and makes this case more akin to

Karcher v. May, 484 U.S. 72, 75, 81-82 (1987), where the Supreme Court

held that two New Jersey legislators had standing to intervene in a suit

---

[9]     In considering whether the petitioners had third-party standing, the Supreme Court also acknowledged that there are "certain, limited exceptions" to the rule against resting a claim to relief on the legal rights or interests of third parties.  Id. at 708 (quoting Powers v. Ohio, 499 U.S. 400, 410 (1991)).  While Rivas maintains PAGA itself confers standing and a third-party standing analysis is unnecessary, Rivas' representative PAGA claim would easily satisfy the three requirements to have third-party standing in federal court. See Powers, 499 U.S. at 411 (listing requirements). First, Rivas suffered an "injury in fact," thus giving him a "sufficiently concrete interest" in the outcome of the issue in dispute. Id. Second, Rivas has a "close relation" to the State of California through PAGA, id., which has "deputize[d]" him to enforce its laws, Kim, 9 Cal. 5th at 83. Third, there is a hindrance to California's ability to protect its own interests, Powers, 499 U.S. at 411.  Indeed, PAGA exists because the State of California acknowledged it needed a mechanism to "enhance enforcement of provisions punishable only through government-initiated proceedings," Kim, 9 Cal. 5th at 89, and it could not do so using solely its own enforcement agencies.  See also Seifu v. Lyft, Inc., 89 Cal. App. 5th 1129, 1137 (2023) (observing the Legislature enacted PAGA in 2003 "to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves" by "allow[ing] aggrieved employees to act as private attorneys general and recover civil penalties for Labor Code violations") (internal citations and quotation marks omitted).

against New Jersey and defend the law because the legislature had authority under New Jersey law to represent New Jersey's interests in court.[10]

The second case Coverall cites, Lee v. Am. Nat'l Ins. Co., 260 F.3d 997 (9th Cir. 2001), involved a plaintiff who purchased insurance from an insurer, but not from the insurer's subsidiary. This Court found the plaintiff did not have standing to assert claims against a subsidiary insurer because he suffered "no individualized injury as a result of the defendant's challenged conduct." Id. at 1001. Likewise, in Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1022 (9th Cir. 2004), this Court held a plaintiff could not pursue injunctive relief against defendants because she had "no contractual relationship with" them and was "not personally threatened by their conduct." Such is not the case here because the injuries alleged by Rivas are clearly attributable to Coverall, and there is no dispute about this fact.

Similarly, Coverall cites Magadia v. Wal-Mart Assocs., Inc., 999 F.3d 668, 678 (9th Cir. 2021), where this Court found plaintiff lacked standing to pursue meal break claim violations because "he himself did not suffer

---

[10]    The Supreme Court has also indicated that laws appointing individuals "as agents of the people" of a state to defend, in lieu of public officials, the constitutionality of initiatives made law of the state *would* confer standing. See Hollingsworth, 570 U.S. 693 at 712-13; Arizonans for Off. Eng. v. Arizona, 520 U.S. 43, 65 (1997). It stands to reason that laws appointing individuals as agents of the state to enforce laws, in lieu of public officials, would also confer standing.

injury" from those alleged violations. Here, by contrast, Rivas himself

personally suffered violations of the California Labor Code while working

for Coverall, and these are the same violations that support his PAGA claim

in federal court. Moreover, California law is clear that an individual need

not personally suffer every violation in order to bring a representative PAGA

claim. See Kim, 9 Cal. 5th at 85 ("Employees who were subjected to at least

one unlawful practice have standing to serve as PAGA representatives even

if they did not personally experience each and every alleged violation.").[11]

The District Court should have stayed rather than dismissed the

representative portion of Rivas' PAGA claim while the individual claim

proceeds in arbitration (if an arbitration is to be had). This is because this

very question was about to be—and now has been—decided by the Supreme

Court of California in Adolph. Rivas cited to numerous cases in which state

appellate courts affirmed a litigant's ability to pursue the representative

portion of their PAGA claim after arbitrating the individual portion, as well

---

[11]     Accepting Coverall's argument regarding Article III standing would
have risible ramifications well beyond the PAGA context. For example, in
class action litigation, lead plaintiffs are routinely permitted to represent
class members for a broader period of time than they worked for an
employer, so long as the challenged practice was ongoing before and after
their employment. Crediting Coverall's argument would be tantamount to
saying class representatives could not engage in this well-established
practice.

as several federal court decisions that have adopted this position or have stayed similar cases to await the ruling in <u>Adolph</u>.[12]  It was an abuse of discretion for the District Court not to do the same here.

In any case, now that <u>Adolph</u> has been decided by the California Supreme Court and has definitively made clear that Rivas would maintain standing to pursue the representative portion of his PAGA claim, this Court should follow <u>Adolph</u>.  Regardless of what happens with the individual portion of Rivas' claim, the representative portion of the PAGA claim can undoubtedly proceed in court, pursuant to <u>Adolph</u>.

## CONCLUSION

Coverall's Answering Brief does not introduce facts or arguments Rivas did not anticipate or could not rebut.  Instead, it relies on falsehoods and inapposite law.  Accordingly, this Court should reverse.

---

[12]     <u>See</u> <u>Martinez-Gonzalez v. Elkhorn Packing Co., LLC</u>, 2022 WL 10585178, at *12 (N.D. Cal. Oct. 18, 2022) (agreeing to "stay the representative PAGA claims pending further legal developments" following <u>Viking River</u>); <u>see</u> <u>also</u> <u>Dominguez v. Sonesta Int'l Hotels Corp.</u>, 2023 WL 25707, at *7 (N.D. Cal. Jan. 3, 2023) (staying non-individual portion of PAGA claim pending a decision by the California Supreme Court in the pending <u>Adolph</u> case rather than dismissing); <u>see</u> <u>also</u> <u>George v. Manheim Invs., Inc.</u>, 731 F. App'x 624, 627 (9th Cir. 2018) (permitting the California district court to stay the case pending the resolution of a California Supreme Court decision that may inform the district court's reasoning on a threshold issue).

Respectfully submitted,

CARLOS RIVAS, on behalf of himself
and all others similarly situated,

By his attorneys,

_s/ Shannon Liss-Riordan_
Shannon Liss-Riordan
Adelaide H. Pagano
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street Suite 2000
Boston, MA  02116
(617) 994-5800

Dated: July 21, 2023

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Plaintiff-Appellant Carlos Rivas

states that he is aware of one other related case pending in this Court,

Gonzalez v. Coverall North America Inc., Appeal No. 22-56189.


Dated: July 21, 2023                    *s/ Shannon Liss-Riordan*_____
                                        Attorney for Plaintiff- Appellant

# UNITED STATES COURT OF APPEALS
## For the Ninth Circuit Appeal No. 22-56192

─────────────────────────

## Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

─────────────────────────

1. This Reply Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)B) because this brief contains fewer than 7,000 words, as well as the volume and page limitation of Circuit Rule 32-1 because it does not exceed 25 pages.

2. This motion complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1) because this brief has been prepared in a proportionally spaced typeface using Word 14-point Times New Roman typeface.

*/s/ Shannon Liss-Riordan*
Attorney for Plaintiff- Appellant
Dated: July 21, 2023

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
No. 22-56192

**CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that this Reply brief was filed

through the United States Court of Appeals for the Ninth Circuit ECF

system and will be sent electronically to the registered participants as

identified on the Notice of Electronic Filing (NEF), including the following

counsel of record for Defendant–Appellee:

Norman M. Leon
DLA PIPER LLP
444 West Lake Street, Suite 900
Chicago, IL 60606
Tel: (312) 368-4000
Fax: (312) 236-7516
norman.leon@dlapiper.com

Julie Dunn
DLA PIPER LLP
4365 Executive Drive Suite 1100
San Diego, CA 92121-2133
Tel: (619) 699-2690
Julie.dunne@dlapiper.com

*s/ Shannon Liss-Riordan*
Attorney for Plaintiff-Appellant

Dated:  July 21, 2023

21